JUDICIAL WATCH, INC., Plaintiff,

v.

UNITED STATES DEPARTMENT
OF HEALTH AND HUMAN
SERVICES, Defendant.

No. Civ.A. 97–2026 (RCL).

United States District Court,
District of Columbia.

Oct. 13, 1998.

Larry Klayman, Washington, DC, for Plaintiff.

Scott Harris, U.S. Attorney's Office, Washington, DC, for Defendant.

### MEMORANDUM OPINION

LAMBERTH, District Judge.

This case comes before the Court on defendant's motion for summary judgment.

Upon consideration of the motion and accompanying affidavit, plaintiff's opposition thereto, and defendant's reply, as well as *in camera* review of a portion of the withheld materials, defendant's motion will be GRANTED and plaintiff's action will be DISMISSED with prejudice.

### FACTS

On July 7, 1997, plaintiff submitted to the Department of Health and Human Services (HHS) a request under the Freedom of Information Act (FOIA) for any and all documents relating to the adoption, interpretation, or implementation of legislation concerning abstinence education enacted as section 912 of the Personal Responsibility and Work Reconciliation Act of 1996, codified at section 510 of Title V of the Social Security Act. On July 8, 1997, HHS forwarded the request to the Office of General Counsel (OGC) and the Assistant Secretary for Planning and Education (ASPE), with a request that those two groups conduct searches for responsive documents. On the advice of ASPE staff, the request was also forwarded to the Health Resources and Services Administration (HRSA), a major operating division of HHS. On September 5, 1997, HHS responded to plaintiff's FOIA request by releasing 1,746 pages of documents from OGC, ASPE, and HRSA. HHS also informed plaintiff that it was withholding all or portions of 270 pages under FOIA Exemption 5, portions of 68 pages under FOIA Exemption 6, and 38 pages under FOIA Exemption 2. HHS subsequently released the 38 pages initially withheld under Exemption 2 and one document initially withheld under Exemption 5. Plaintiff did not pursue any administrative appeal of HHS's September 5, 1997 response, but filed suit on that same day.

On October 22, 1997, HHS received a second, identical FOIA request from the plaintiff. Copies of the request were again sent to OGC, ASPE, and HRSA with instructions to provide any new responsive documents. This second request was also forwarded to the HHS Office of the Inspector General (OIG) and to the Office of the Assistant

Secretary for Legislation (ASL). Both OIG and ASL reported that they had found no responsive documents, and OGC indicated that it had found no responsive documents not reported after the initial search. ASPE and HRSA, however, together produced another large volume of documents. On February 11, 1998, HHS released to plaintiff approximately 4,146 pages of responsive documents and withheld 285 pages in their entirety and portions of a number of otherwise released pages under Exemptions 4, 5, and 6. Plaintiff filed suit challenging defendant's response to the second request on November 11, 1997, before HHS released the second set of responsive documents.

At the Court's suggestion, plaintiff filed an amended complaint in its first action on May 27, 1998, including its objections to both searches. The second action was then voluntarily dismissed. HHS filed a motion for summary judgment on June 26, 1998, with an attached affidavit and *Vaughn* index. Plaintiff opposed the motion for summary judgment and requested a stay of the Court's consideration of the motion and an opportunity to conduct discovery. Plaintiff did not include a Rule 56 affidavit with its opposition to defendant's motion.

On October 5, 1998, at the request of the Court, HHS submitted for *in camera* review all responsive documents withheld pursuant to FOIA Exemption 5.

After consideration of the various motions and oppositions thereto, as well as the *in camera* inspection of the Exemption 5 materials, plaintiff's request for a stay and discovery will be denied and defendant's motion for summary judgment will be granted.

## DISCUSSION

Under Federal Rule of Civil Procedure 56, summary judgment shall be entered if it is shown that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.Proc. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party bears the burden of persuasion, although a party opposing a properly supported motion may not rely solely on the allegations set forth in its pleadings but must instead, "by affidavits or [other evidentiary showing], set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.Proc. 56(e); *Celotex,* 477 U.S. at 324–25, 106 S.Ct. 2548.

■ Rule 56 governs summary judgment in FOIA cases, although with one special consideration. FOIA places upon the agency the burden of proving that it has a proper basis for withholding responsive documents. *See* 5 U.S.C. § 552(a)(4)(B); *e.g., United States Dep't of Justice v. Reporters Comm. for Freedom of the Press,* 489 U.S. 749, 755, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989). Consequently, in support of a motion for summary judgment where responsive documents have been withheld pursuant to any of the FOIA Exemptions, the moving agency must show not only that the plaintiff has failed to raise a genuine issue of material fact as to the adequacy of the search, but also that the agency is entitled to judgment as a matter of law upholding its invocation of the statutory exemption.

■ In response to this special aspect of summary judgment in the FOIA context, agencies regularly submit affidavits, including so-called *Vaughn* indeces, in support of their motions for summary judgment against FOIA plaintiffs. *See* United States Dep't of Justice, *Freedom of Information Act Guide* 485–98 (Sept.1997 ed.); *Vaughn v. Rosen,* 484 F.2d 820 (1973). The Court of Appeals addressed the sufficiency of such affidavits in *Hayden v. National Sec. Agency,* 608 F.2d 1381, 1387 (1979):

> [T]he affidavits must show, with reasonable specificity, why the documents fall within the exemption. The affidavits will not suffice if the agency's claims are conclusory, merely reciting statutory standards, or if they are too vague or sweeping. If the affidavits provide specific information sufficient to place the documents within the exemption category, if this information is not contradicted in the record, and if there is no evidence in the record of agency bad faith, then summary judgment is appropriate without *in camera* review of the documents. The sufficiency of the affidavits is not

undermined by a mere allegation of bad faith, nor by past agency misconduct in other unrelated cases. Unless the affidavits are deficient in one of the above ways, the court need inquire no further into their veracity.

*Id.* (footnotes omitted). Likewise, plaintiff cannot rely on unsupported inferences that other documents must have been created. *See SafeCard Servs., Inc. v. Security & Exchange Comm.,* 926 F.2d 1197, 1200 (D.C.Cir. 1991); *Judicial Watch, Inc. v. Clinton,* 880 F.Supp. 1, 10 (D.D.C.1995). In sum, an agency's affidavits (including the *Vaughn* index) are accorded substantial weight by district courts in making the de novo review required by FOIA. *See, e.g., Lesar v. Department of Justice,* 636 F.2d 472, 481 (D.C.Cir. 1980); *Judicial Watch,* 880 F.Supp. at 10.

## I. *Adequacy of HHS's Search*

█ Plaintiff claims that, for political reasons, "HHS has *likely* failed to conduct an adequate search for documents." Pl.'s Opp. Summ. Judg. at 4 (emphasis added). Plaintiff offers as examples of documents "apparently omitted" from HHS's FOIA responses recordings or transcripts of communications with state officials (which are, according to plaintiff, "almost always recorded or transcribed"), correspondence with the Association for Child and Maternal Health, and other categories of documents. The Court is well aware of the information imbalances between an agency and a FOIA requester, but, even viewed in the most favorable light, these near-allegations are inadequate as a basis to deny summary judgment. *See Hayden,* 608 F.2d at 1387; *SafeCard Servs.,* 926 F.2d at 1200.

Plaintiff's underlying rationale for alleging that HHS failed to conduct a thorough search, however, does give the Court at least temporary pause. Plaintiff's argument is that, "[b]ased on prior conduct, the Clinton Administration cannot be believed in matters which are politically charged, and therefore, HHS' affidavit cannot be taken at face value ..." Pl.'s Opp. Summ. Judg. at 4. Insofar as plaintiff is referring to the conduct of other agencies within the current administration in other unrelated FOIA cases, the case law rejects such considerations as a basis for

questioning an agency's search, *see, e.g., Hayden,* 608 F.2d at 1387, and the imputation of bad faith from one agency of the Executive Branch to another, particularly with regard to unrelated matters, does not comport with a realistic understanding of FOIA searches, which are typically orchestrated by lower-level agency officials unlikely, given the size of the modern Executive, to be in contact with their peers in other agencies.

Plaintiff does hint at another factor, however, which may be a legitimate consideration for the Court: plaintiff alleges that the Clinton administration has endeavored to thwart the will of Congress by resisting implementation of the abstinence legislation underlying plaintiff's FOIA request. *See* Pl.'s Request for Status Conf. (filed April 29, 1998). If the Court were presented with actual evidence of such conduct by the administration, such a showing might well support an order for *in camera* review of withheld documents or perhaps even, in certain cases, limited discovery to explore the adequacy of the agency's search. Unlike references to other agencies' conduct in other cases, information regarding an unwillingness of *this* agency to comply with the duties delegated to it by Congress would raise suspicion regarding the agency's good faith efforts to find and release documents that, presumably, might reveal its reticence. The Court is careful to add, however, that some substantial showing by a plaintiff would be required to persuade the Court to order *in camera* review or limited discovery on these grounds. The nature of the political process is such that the Executive and Legislative Branches may often disagree on the most effective approach to resolving any particular problem facing the nation. The Court must presume, however, that the Executive Branch is aware of its duty under the Constitution to faithfully execute the law as enacted by Congress, and that it will comply with this constitutional mandate even in those instances in which it may think legislation to have been unwisely enacted. In any event, plaintiff here has failed to demonstrate to the Court anything more than plaintiff's bare suspicion that the Clinton administration

may have been opposed to enaction of the legislation and perhaps reticent in implementing the legislation as finally enacted. Without some evidence of obstruction or similar misconduct by HHS, the Court must presume that the agency is properly carrying out its constitutional and statutory duties. Plaintiff's unsubstantiated suspicions, therefore, are insufficient to call into question the adequacy of HHS's search and the truthfulness of its affidavit.

Plaintiff also attacks the adequacy of HHS's affidavit as "not specific[,] very conclusory," and inadequate to demonstrate that the search was reasonably calculated to uncover all responsive documents. The Court disagrees.

First, HHS's affidavit was made by Rosario Cirrincione, the Freedom of Information Officer for HHS. Contrary to plaintiff's contention, the courts have recognized that the officer ultimately responsible for the execution and supervision of a FOIA search is the appropriate affiant in cases where documents are collected from several departments and units. *See SafeCard Servs.,* 926 F.2d at 1201 (citing *Meeropol v. Meese,* 790 F.2d 942, 951 (D.C.Cir.1986)). Furthermore, the declaration's five-page overview of the search effort is adequate to support the reasonableness of the search. Unit-specific descriptions are not required, at least where plaintiff has failed to raise some issue of fact necessitating rebuttal.

In fact, plaintiff has presented no affidavit or other evidence in support of its assertion that HHS's search was inadequate, contrary to the requirements of Federal Rule of Civil Procedure 56. At least with regard to this issue of the adequacy of HHS's search, plaintiff cannot rely on mere unsubstantiated allegations of bad faith and unreasonable search procedures. *See Celotex,* 477 U.S. at 324–25, 106 S.Ct. 2548. The Court realizes that FOIA plaintiffs are generally at some disadvantage in opposing motions for summary judgment, because they obviously cannot be expected to produce the documents that they claim should have been, but were not, released. This disadvantage is not disabling, however, because the "genuine issue of fact" relevant to a FOIA summary judgment mo-

tion is not the existence of any particular document, but rather the reasonableness of the agency's search. *See SafeCard,* 926 F.2d at 1201 (and cases cited therein). Here, HHS's affidavit is sufficiently detailed to allow the plaintiff to challenge the search and the Court to review it. When viewed from this perspective, plaintiff is not excessively hampered by its lack of access to any particular documents, and its bare assertion that there must exist some unreleased responsive documents is unavailing. *See SafeCard,* 926 F.2d at 1200.

Furthermore, it is plain that HHS conducted a search reasonably calculated to find all documents responsive to plaintiff's FOIA request. The search eventually spanned the OGC, ASPE, HRSA, OIG, and ASL, and approximately 6,000 pages of responsive material were found, of which less than seven hundred pages were withheld or partially withheld. HHS's affidavit is uncontroverted by any evidence in the record, and plaintiff's speculation as to the trustworthiness of the Clinton administration and HHS's failure to release documents that plaintiff apparently expected to be released is insufficient as a matter of law to defeat defendant's motion for summary judgment as to the adequacy of the FOIA search. Plaintiff's request for a stay pending discovery will therefore be denied, and judgment will be entered in favor of the defendant on this claim.

## II. *Withholding of Documents Under the FOIA Exemptions*

A separate inquiry must be made to determine if HHS's withholding of documents and portions of documents was justified under the claimed FOIA Exemptions. As previously noted, in this context it is the agency that bears the burden of demonstrating that the exemption was properly invoked. *See* 5 U.S.C. § 552(a)(4)(B). As the Court of Appeals stated in *Hayden,* this burden is satisfied "[i]f the affidavits provide specific information sufficient to place the documents within the exemption category, if this information is not contradicted in the record, and if there is no evidence in the record of agency bad faith . . ." *Hayden,* 608 F.2d at 1387.

## A.  Exemption 5

5 U.S.C. § 552(b)(5) exempts from FOIA's scope "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than the agency in litigation with the agency." This Exemption has been held to incorporate "all civil discovery rules." *Martin v. Office of Special Counsel, MSPB*, 819 F.2d 1181, 1185 (D.C.Cir.1987). Two of the privileges most frequently invoked under Exemption 5 are the deliberative process privilege and the attorney-client privilege, both of which were invoked by HHS in withholding documents or portions of documents from plaintiff.

### 1.  *Deliberative Process Privilege*

As the Court of Appeals noted recently, the deliberative process privilege is intended to protect agency decisionmaking by allowing government officials to debate alternative approaches in private. *See In re Sealed Case*, 121 F.3d 729, 737 (D.C.Cir.1997). More specifically, the privilege has been said to further three interests: (1) protecting creative debate and candid consideration of alternatives, and thus improving the quality of agency decisionmaking; (2) protecting the public from confusion that could result from premature disclosure of potential policies before any policy is actually settled upon; and (3) safeguarding the integrity of agency decisionmaking by ensuring that agency officials are judged by their actions and decisions rather than by what alternatives they considered before acting or deciding. *See Russell v. Department of the Air Force*, 682 F.2d 1045, 1048 (D.C.Cir.1982) (citing *Jordan v. United States Dep't of Justice*, 591 F.2d 753, 772–73 (D.C.Cir.1978)).

■ In furtherance of these interests, two elements are essential to proper invocation of the deliberative process privilege: the withheld material must be (1) predecisional and (2) deliberative. *See id.* Put another way, the deliberative process privilege does not protect documents that merely state or explain agency decisions, nor does it protect purely factual material that does not reveal the agency's deliberations. *See In re Sealed Case*, 121 F.3d at 737.

■ Tracing the *Hayden* court's formula, therefore, HHS's burden in moving for summary judgment on the issue of deliberative process privilege, absent evidence of bad faith on HHS's part, is to provide information in its affidavit that is uncontradicted in the record and specific enough to place the withheld documents within the category of predecisional, deliberative materials. After a careful review of HHS's *Vaughn* index, the Court finds that HHS has satisfied this standard and is entitled to summary judgment on this claim.

HHS provides in its *Vaughn* index, with regard to each responsive document or portion of a document withheld from plaintiff, a description of the document including in most instances who produced the document (and that person's department), to whom it was transmitted (and that person's department), when it was transmitted, and a brief description of the document's subject matter. This description provides plaintiff and the Court with enough information in each instance to surmise whether the document is a draft or other preliminary stage of decisionmaking, whether it was directed to a superior or inferior official, and whether it was transmitted within the agency, between agencies, or to or from someone outside of the agency. Each entry also indicates the Exemption invoked and the interest served by nondisclosure. After reviewing the index in its entirety, the Court is satisfied that each document withheld pursuant to the deliberative process privilege was properly withheld.

In addition to placing each document within the category of predecisional deliberative materials, HHS's affidavit and *Vaughn* index are uncontradicted in the record (plaintiff has failed to introduce even an affidavit in support of its opposition to summary judgment), and there is no evidence whatsoever of agency bad faith in this action. Consequently, HHS's affidavits are entitled to substantial weight and are sufficient to entitle HHS to judgment as a matter of law upholding its invocation of the deliberative process privilege under Exemption 5.[1]

**1.** Because the Court was in possession of all materials withheld pursuant to Exemption 5 for

### 2. *Attorney–Client Privilege*

Plaintiff also objects to HHS's invocation of the attorney-client privilege in support of a small number of withheld documents. However, because in each instance in which HHS invoked the attorney-client privilege it also invoked the deliberative process privilege, which the Court has already upheld, the Court will not decide whether the invocation of attorney-client privilege is adequately supported by HHS's affidavits and *Vaughn* index.

### B. Exemptions 4 and 6

Plaintiff has not challenged HHS's invocation of Exemptions 4 and 6 for several small portions withheld from otherwise released documents. A review of the *Vaughn* index also reveals that these exemptions were properly invoked to protect confidential financial information and private personnel information. Defendant is, therefore, also entitled to judgment as a matter of law sustaining its invocation of Exemptions 4 and 6.

### C. Segregability of Nonexempt Material from Withheld Material

■ As a final consideration applicable to HHS's withholding of materials pursuant to Exemptions 4, 5, and 6, the Court is required (upon plaintiff's reasonable request) to make specific findings as to the extent to which nonexempt responsive material might be "segregated" from exempt materials and released to the FOIA requester. *See Summers v. Department of Justice*, 140 F.3d 1077, 1081 (D.C.Cir.1998); *Krikorian v. Department of State*, 984 F.2d 461, 467 (D.C.Cir.1993).

Five years ago, in *Krikorian*, 984 F.2d at 466–67, the Court of Appeals explained that a district court's review of an agency's decision to withhold material under a FOIA Exemp-

tion must focus on withheld *information* and not merely on withheld documents. In other words, it is not sufficient for a district court to determine that a particular document, as a whole, may be appropriately withheld pursuant to one of the several FOIA Exemptions, because of the possibility that the document contains sections of responsive information that do not fit the statutory exemption. As the Court of Appeals noted, the FOIA makes clear that nonexempt information that may reasonably be segregated from exempt material shall be released after deletion of the protected information, *see* 5 U.S.C. § 552(b), and the courts have insistently applied this requirement to agencies in the litigation context, *see Krikorian*, 984 F.2d at 466–67 (and cases cited therein).

The Court of Appeals recently returned to the subject of segregability findings and recognized the substantial burden that is placed on judges when a withholding agency fails to provide sufficient information in its affidavits to establish with specificity that all information withheld from a FOIA requester fits within one of the statutory exemptions. *See Summers*, 140 F.3d at 1080–81. Citing the three-fold burden presented at the appellate level, the Court of Appeals stressed the need for the district courts to make specific findings as to segregability whenever a FOIA plaintiff reasonably requests such findings. *See id.*

The Court of Appeals' insistence on specific findings of segregability has obvious implications not just for district courts but also for agencies defending FOIA lawsuits. If a court is to make specific findings of segregability without conducting *in camera* review in every FOIA case, the government simply must provide more specific information in its *Vaughn* affidavits.[2] The Court is well aware of the already substantial burden of FOIA

---

the purpose of making segregability findings, *see infra* Part II.C, the Court, in an abundance of caution, reviewed each withheld document or portion of a document to confirm that it had been properly withheld. Although the Court does not suggest that *in camera* review was required in this case, the Court's review in fact supported HHS's claims with respect to each page or portion of material withheld under the deliberative process privilege.

**2.** Because findings of segregability are required only when "reasonably requested" by a FOIA plaintiff, a logical way for the agencies to meet this requirement may well be to submit supplemental *Vaughn* affidavits in those cases where plaintiffs so request (and where the request is reasonable).

requests on the agencies, and this requirement of more rigorous specificity will undoubtedly increase that burden to some extent. However, the FOIA is unambiguous regarding the duty of federal agencies to disclose to FOIA requesters all information that does not fall within one of the several categories which in Congress's determination justify nondisclosure, and the responsibility of the courts to ensure full agency compliance is equally clear.

### 1. Exemption 5

■ Rather than require supplemental *Vaughn* affidavits in this action, the Court requested that HHS submit for *in camera* inspection all documents withheld pursuant to Exemption 5. After a document-by-document review of the materials, the Court finds that only document number 55 of the second *Vaughn* index contains nonexempt material (four paragraphs in total) that may reasonably be segregated and released to plaintiff. Each of the other pages and portions of pages withheld under Exemption 5 were properly withheld and do not contain any factual or otherwise nonexempt material not inextricably part of the deliberative process protected by Exemption 5.[3]

### 2. Exemptions 4 and 6

In contrast to HHS's invocation of Exemption 5, the agency's treatment of Exemptions 4 and 6 in its *Vaughn* affidavits represents an example of the appropriate level of specificity. The *Vaughn* indices state with specificity what information was withheld from each otherwise released document, such as "employee resume" and "single numerical figure representing … [p]ercentage cost rate breakdown". This information is sufficient for the Court to find, on the basis of the *Vaughn* indices alone, that no segregable material exists within the narrow portions withheld pursuant to Exemptions 4 and 6.[4]

### CONCLUSION

Because plaintiff has failed to present any genuine issue of material fact as to the adequacy of defendant's FOIA search, and because defendant has demonstrated that it is entitled to judgment as a matter of law on that and all other claims, defendant's motion for summary judgment will be GRANTED and judgment will be ENTERED for the defendant, DISMISSING plaintiff's claims with prejudice. A separate order will issue this date.

### *ORDER*

Upon consideration of plaintiff's motion to stay consideration and for limited discovery and *in camera* review, and the opposition thereto, it is hereby ORDERED that plaintiff's motion is DENIED.

Upon consideration of defendant's motion for summary judgment and attached affidavit, the opposition thereto, and *in camera* review of a portion of the withheld materials, it is hereby ORDERED that defendant's motion is GRANTED, except as follows:

Defendant is hereby ORDERED to release to the plaintiff paragraphs 1–4 of document number 55 from the second *Vaughn* index.

---

3. The experience reviewing *in camera* even the relatively small amount of material in this case only reinforces the Court's belief that the agency must provide more specific affidavits when a plaintiff reasonably requests findings of segregability. In this case, only four paragraphs out of hundreds of pages of material were ultimately found to be segregable. The nature of the task, however, is such that a court must review each page of withheld material individually. Despite the additional burden on the agency, it is more efficient to require the agency's FOIA department to produce a supplemental *Vaughn* affidavit than to require the federal courts to duplicate the agency's efforts in every FOIA action. *In camera* review should be the exception and not the rule.

4. In instances such as this, where small portions of information are withheld from otherwise released documents, the agency might also consider submitting the redacted and released pages to the Court along with the *Vaughn* index. Often, the Court will be able to determine from the extent, placement, and context of minor redactions that the withheld material does not include any reasonably segregable nonexempt material. The effectiveness of this practice, however, diminishes rapidly as the size of the redactions grows, and it is not appropriate where large blocks of information are withheld.

**248**

As to all other matters, it is hereby ORDERED that judgment in this case be entered in favor of the defendant, dismissing the case with prejudice.

SO ORDERED.